UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FAITH GRACE P.,

                Plaintiff,

     v.                                            5:18-CV-781
                                                 (DJS)

ANDREW SAUL, *Commissioner of Social Security*,

                Defendant.
_____

**APPEARANCES:**                             **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ      PETER W. ANTONOWICZ, ESQ.
Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.           AMY C. BLAND, ESQ.
OFFICE OF GENERAL COUNSEL
J.F.K. Federal Building
Room 625
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

     Plaintiff, Faith Grace P., brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

not disabled. Dkt. No. 1. Currently before the Court is Plaintiff's Motion for Judgment on the Pleadings and the Commissioner of Social Security's Motion for Judgment on the Pleadings. Dkt. Nos. 19 & 23. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted. The Commissioner's decision is affirmed and the Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1962, making her forty-nine years old at the alleged onset of disability. Dkt. No. 9, Admin. Tr. ("Tr."), p. 82. Plaintiff reported completing high school. Tr. at p. 94. She has past work experience as a licensed practical nurse and as a developmental aide. *Id.* Plaintiff alleges disability based upon fibromyalgia, osteoarthritis and osteoporosis, sciatica, pernicious anemia, major depressive disorder, post-traumatic stress disorder, bipolar disorder, generalized anxiety disorder, and dissociative identity disorder. Tr. at p. 82.

### B. Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income benefits on July 10, 2014. Tr. at pp. 82, 96, & 108. She alleged a disability onset date of September 17, 2011. Tr. at pp. 83, 97, & 108. Plaintiff's application was initially denied on October 20, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 128-134. Plaintiff appeared at a

hearing before ALJ Paul Greenberg on August 10, 2016. Tr. at pp. 22-54. On December 27, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 108-121. On November 13, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012 and that she had not engaged in substantial gainful activity since September 17, 2011, the alleged onset date. Tr. at pp. 110-111. Second, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, obesity, affective disorder, and anxiety disorder. Tr. at p. 111. The ALJ also found Plaintiff had a number of non-severe impairments. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 112-114. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> The claimant can frequently balance and stoop. She occasionally can kneel, crouch, crawl, and climb ramps and stairs. The claimant can have occasional interaction with co-workers as part of a job, but no interaction with the public.

3

Tr. at p. 114. Fifth, the ALJ found that Plaintiff could not perform her past relevant work. Tr. at p. 119. Sixth, the ALJ found that based upon Plaintiff's age, education, and functional abilities there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 120-121. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 121.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califon*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

5

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff identifies four "issues presented" for the Court's consideration in her Motion:

1) whether the Commissioner committed errors in determining Plaintiff's RFC;

2) whether the Commissioner properly evaluated the opinion evidence;

3) whether the Commissioner erred in failing to properly consider the full extent of Plaintiff's non-exertional limitations; and

6

4) whether the Commissioner improperly evaluated Plaintiff's credibility and allegations of disabling pain and fatigue.

Dkt. No. 19, Pl.'s Mem. of Law at pp. 1 & 11-23. Defendant counters that the ALJ's determination is supported by substantial evidence and that no errors exist warranting reversal or remand. Dkt. No. 23, Def.'s Mem. of Law at pp. 4-21.

### A. The ALJ's Weighing of the Medical Opinions

The first two issues identified by Plaintiff relate directly to alleged errors by the ALJ in the way he evaluated the medical opinions in the record. Specifically, Plaintiff alleges that the ALJ erred in "fail[ing] to follow the treating physician rule in affording 'very little weight' to the physical opinion of treating physician Douglas Rahner." Pl.'s Mem. of Law at p. 13; *see also id.* at pp. 15-17 (discussing treating physician rule and Dr. Rahner). Plaintiff also objects that the ALJ improperly afforded "great weight" to the opinion of Dr. Kalyani Ganesh, even though that opinion does not support the ALJ's findings. *Id.* at p. 13. Neither argument is a basis for reversal or remand.

"It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole." *Banks v. Astrue*, 955 F. Supp. 2d 178, 188 (W.D.N.Y. 2013). Plaintiff's arguments that the ALJ erred in his assessment of the various opinions "must be viewed in accord with the significant deference an ALJ receives in weighing medical opinions." *June S. v. Comm'r of Soc. Sec.*, 2018 WL 3626423, at *4 (N.D.N.Y. July 27, 2018).

7

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The ALJ recognized that Dr. Rahner, Plaintiff's primary care provider, was a treating source whose opinion would normally be entitled to significant weight. Tr. at p. 117. The ALJ, however, specifically noted that Dr. Rahner's conclusions were "inconsistent with the weight of the medical evidence" and not supported by "Dr. Rahner's own treatment notes." Tr. at pp. 117-118. The ALJ did so after having discussed the medical evidence in the record at length. Tr. at pp. 114-118. The ALJ specifically found that certain limitations identified by Dr. Rahner, in particular limitations on Plaintiff's ability for sedentary exertion and likely absence from work, were not reflected in Dr. Rahner's treatment notes. Tr. at p. 118. The ALJ also

8

discounted Dr. Rahner's medical opinion because it was provided on a check-box form with little narrative support.  Tr. at p. 117.

The ALJ, therefore, made specific findings regarding the second, third, and fourth factors identified in *Greek*.  And while the ALJ did not specifically reference the frequency, length, and extent of Dr. Rahner's treatment of Plaintiff in finding Dr. Rahner's opinion entitled to little weight, the ALJ had available to him nearly five years' worth of records from Dr. Rahner's practice, Tr. at pp. 591-741, which the ALJ specifically referred to in his decision.  *See*, *e.g.*, Tr. at p. 117.  Even without specific reference, it is clear that the ALJ did consider the full scope of Dr. Rahner's treatment.

In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. §§ 416.927(c)(2) & 404.1527(c)(2).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion,'" giving "good reasons for not crediting the opinion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d 117, at 129-30 (2d Cir. 2008)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)); *Colvin on behalf of G.R.K. v. Colvin*, 2017 WL 1167292, at *6 (N.D.N.Y. Mar.

28, 2017) (quoting *Atwater v. Astrue*, 512 Fed. Appx. at 70) (collecting cases) ("Although an explicit and 'slavish recitation of each and every factor' is not required, 'the ALJ's reasoning and adherence to the regulation [must be] clear.'"). Here, the ALJ's consideration of Dr. Rahner's opinion was consistent with the applicable regulations and caselaw. He evaluated the appropriate factors and amply explained his reasons for not affording the opinion controlling weight.

The ALJ also did not err in discounting Dr. Rahner's use of a checklist with little narrative support. Courts have long recognized that "[f]orm reports of this sort are, by their nature, of limited evidentiary value." *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014). As a result, "courts have routinely recognized the failure to provide a requested narrative explanation on a check box form as a legitimate reason for affording a treating source opinion limited weight." *Dawn P. v. Berryhill*, 2019 WL 1024279, at *6 (N.D.N.Y. Mar. 4, 2019) (citing cases).

Plaintiff also objects that the ALJ's decision is not supported by substantial evidence because he gave "great weight" to the opinion of Dr. Ganesh, a consultative examiner, "even though Dr. Ganesh's opinions in no way support the ALJ's RFC determination." Pl.'s Mem. of Law at p. 13. The ALJ gave great weight to Dr. Ganesh's findings that Plaintiff had no significant limitations in activities like sitting, standing and walking. Tr. at p. 117. If supported by the record, the ALJ was permitted to rely on Dr. Ganesh's opinion in forming the RFC. "State agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act.

Accordingly, their opinions can constitute substantial evidence." *Noble v. Comm'r of Soc. Sec.*, 2015 WL 1383625, at *8 (N.D.N.Y. Mar. 25, 2015) (internal citation omitted); *see also Karen R. v. Berryhill*, 2019 WL 1284250, at *6 (N.D.N.Y. Mar. 20, 2019); *Peryea v. Comm'r of Soc. Sec.*, 2014 WL 4105296, at *7 (N.D.N.Y. Aug. 20, 2014).

Contrary to Plaintiff's argument, the record here supports Dr. Ganesh's conclusions which, in turn, support the RFC. Upon examination, Dr. Ganesh found Plaintiff to be in no acute distress. Tr. at p. 489. She walked with a normal gait, needed no assistive devices or assistance changing or getting on or off the exam table, and she could rise from a chair without assistance. *Id.* Her musculoskeletal examination was normal apart from some limited range of motion. Tr. at p. 490. Dr. Ganesh also found no muscle atrophy, intact grip strength, and no other significant issues. *Id.* This was consistent with other evidence in the record concerning her gait and ability to ambulate without assistance, *see, e.g.*, Tr. at pp. 427-430, 489, 577, & 698, as well as findings regarding her strength and range of motion. Tr. at pp. 586, 689, & 698. To the extent that there is contrary evidence in the record as well, *see, e.g.*, Tr. at 752-754, it is not the role of this Court to reweigh the ALJ's evaluation of the evidence. *Bliss v. Colvin*, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. Aug. 12, 1993).

Plaintiff's final argument is that Dr. Ganesh's opinion is "insufficiently precise" in using the phrase "gross limitations" and the ALJ failed to demonstrate his understanding of the phrase. Pl.'s Mem. of Law at p. 14. This argument is no ground for reversal. The objected to language is commonplace in medical examinations of this sort and Plaintiff offers no specific basis for suggesting that the ALJ did not fully understand what was meant by this language here. Other courts have rejected the argument that use of the phrase "no gross limitations" was vague such that it could not constitute substantial evidence in support of a decision. *Michael M. v. Comm'r of Soc. Sec.*, 2019 WL 530801, at *11 (N.D.N.Y. Feb. 11, 2019). Moreover, as Defendant points out, this same language has been upheld in numerous other cases as sufficient to provide support for an ALJ's decision. Def.'s Mem. of Law at pp. 6-7 & n. 5 (citing cases).

For all these reasons, the Court finds no error in the ALJ's weighing of the medical opinions.

### B. The ALJ's Considerations of Plaintiff's Non-exertional Limitations

Plaintiff next argues that the ALJ erred by not including limitations related to Plaintiff's difficulties in concentration, persistence, and pace in the RFC. Pl.'s Mem. of Law at pp. 17-18.[2] Plaintiff is correct that the ALJ found that she had "moderate

---

[2] Defendant also reads this short section of Plaintiff's brief to raise an additional argument regarding whether substantial evidence supported Dr. Rahner's conclusions regarding the amount of time in a work day that Plaintiff would be off task. *See* Def.'s Mem. of Law at pp. 12-14. Plaintiff's sole citation to the record in support of this argument is Dr. Rahner's checklist medical source statement, Pl.'s Mem. of Law at p. 18, as to which, for the reasons already discussed, the ALJ did not err in affording only little weight. To the extent this argument is

difficulties" regarding concentration, persistence, and pace, Tr. at p. 113, and that the RFC contained no express limitation regarding that finding. Defendant contends that there was no error here, or at most that any error was harmless, because the administrative record amply supports the conclusion that Plaintiff was not disabled despite her difficulties regarding concentration, persistence, and pace. Def.'s Mem. of Law at pp. 14-16. The Court agrees that this argument is no basis for relief.

Courts have previously recognized that "an ALJ does not commit *per se* error in failing to incorporate a moderate limitation found at step three in his step four RFC determination." *Berry v. Comm'r of Soc. Sec.*, 2018 WL 1393784, at *5 (N.D.N.Y. Mar. 19, 2018) (citing *Cohen v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 51, 53 (2d Cir. 2016) and *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)). Even if there were an error in this regard, the Second Circuit in *McIntyre* recognized that any such error could be harmless. *Id.*; *Huestis v. Comm'r of Soc. Sec.*, 2014 WL 4209927, at *5 (D. Vt. Aug. 25, 2014). An error is "harmless error if [the] medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *Dierdre R. v. Comm'r of Soc. Sec.*, 2018 WL 4565769, at *9 (N.D.N.Y. Sept. 24, 2018) (internal quotations omitted). Even assuming error here, it was clearly harmless under this standard.

---

properly presented here, it is rejected for this reason and additionally for the reasons set forth in Defendant's Memorandum of Law.

The ALJ gave "substantial weight" to the opinions of Doctors Kamin and Caldwell. Tr. at p. 118. Dr. Kamin found that Plaintiff had impairments regarding concentration, but nonetheless concluded that she had the functional capacity to perform simple tasks with limited personal interactions. Tr. at p. 93. Dr. Caldwell also found certain non-exertional limitations regarding Plaintiff's ability to relate to others, deal with stress, and maintain attention and concentration, but found she could understand and follow simple directions. Tr. at p. 486. Consistent with this medical evidence, the vocational expert testified that there were at least three unskilled jobs, marker, router, and photocopy machine operator, that an individual with Plaintiff's physical limitations who could only engage in simple routine tasks could perform. Tr. at pp. 48-49. As a result, the record provides ample evidence supporting the conclusion that there were jobs Plaintiff could perform given the full range of limitations identified by the ALJ and thus was not disabled. Any error in not specifically addressing the limitations identified by Plaintiff as part of the RFC, therefore, was harmless. *Berry v. Comm'r of Soc. Sec.*, 2018 WL 1393784, at *5; *Huestis v. Comm'r of Soc. Sec.*, 2014 WL 4209927, at *5. Moreover, the ALJ's finding that Plaintiff could perform light work with limited contact with others is consistent with a moderate limitation in concentration, persistence, and pace, even though not specifically identified in the RFC. *Irene v. Berryhill*, 2019 WL 1349560, at *24 (N.D.N.Y. Mar. 26, 2019) (citing cases).

14

### C. The ALJ's Consideration of Plaintiff's Subjective Complaints

The ALJ concluded that Plaintiff's subjective statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at p. 115. Plaintiff's final argument is that this was error for several reasons. Pl.'s Mem. of Law at pp. 18-23.

"'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Given that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to

15

deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)). Applying these standards to Plaintiff's specific arguments, the Court finds no basis for reversing the ALJ's decision.

Plaintiff first argues that "[n]one of the treating physicians of record raised any question about the accuracy of the Plaintiff's complaints" and thus it was error for the ALJ not to fully credit those complaints. Pl.'s Mem. of Law at pp. 19-20. The fact that Plaintiff's treating providers may not have questioned Plaintiff's complaints of pain does not mean that there was no evidence supporting the conclusion that those complaints were not entirely consistent with the medical record. To the contrary, even a cursory review of the record demonstrates certain inconsistencies between Plaintiff's complaints and the record as a whole. Plaintiff, for example, testified to some difficulty sleeping during her hearing, Tr. at pp. 39-40, despite noting to her treating providers that her insomnia had improved after being prescribed trazodone. Tr. at pp. 479-480 & 719. She also testified to hand tremors, Tr. at pp. 40-41, which is another condition Plaintiff's records indicate had significantly improved prior to the hearing. Tr. at pp. 592-617. As a result, Plaintiff's suggestion that the record does not support the ALJ's conclusion of inconsistencies between the medical evidence and Plaintiff's subjective complaints is not factually supported on this record.

Next, Plaintiff objects to the ALJ's reliance on a February 2, 2012 letter discussing Plaintiff's fibromyalgia and characterizing her condition as "stable." Plaintiff contends that "the ALJ seems unconcerned with the proper meaning of the term

'stable' when applied to medical conditions," Pl.'s Mem. of Law at p. 20, and states that this characterization in no way undermines Plaintiff's claims regarding the severity of her fibromyalgia-related pain. *Id.* at p. 21. The ALJ did not find to the contrary and noted only that this factor, in combination with a number of others, supported the conclusion that Plaintiff's subjective complaints were not fully supported by the record.

Plaintiff next argues that the ALJ improperly relied on "abbreviated excerpts from the office notes, taking references out of complete context." Pl.'s Mem. of Law at p. 21. In making this argument Plaintiff cites to pages 115 and 116 of the administrative record, *id.,* but the Court's review of the references the ALJ made to medical records cited on those pages does not reveal that the records referenced by the ALJ are taken out of context. While certainly the quotations are abbreviated versions of the entire record, "it is not 'require[d] that [the ALJ] have mentioned every item of testimony presented." *Richards v. Colvin*, 2015 WL 1472039, at *6 (N.D.N.Y. Mar. 31, 2015) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Frank B. o/b/o K.B. v. Comm'r of Soc. Sec.*, 2019 WL 3412608, at *6 (N.D.N.Y. July 29, 2019).

Plaintiff also argues that the ALJ should have referred Plaintiff for a consultative exam with a Rheumatologist or Clinical Immunologist if he had doubts about Plaintiff's subjective complaints. Pl.'s Mem. of Law at p. 21. "The ALJ has discretion to order a consultative examination to further develop the evidentiary record." *Cox v. Astrue*, 993 F.Supp.2d 169, 177 (N.D.N.Y. 2012). "Generally, the ALJ should order a consultative

examination when a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved. However, the ALJ is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination." *Atkinson v. Comm'r of Soc. Sec.*, 2017 WL 1288723, at *4 (N.D.N.Y. Apr. 6, 2017) (internal quotations and citations omitted).

While Plaintiff clearly disagrees with the ALJ's assessment of the record, she has not pointed to any conflict in the record, or other ambiguity or gap in the record that would have necessitated referring Plaintiff for such an examination. As noted above, the record in this case contains extensive medical documentation regarding Plaintiff's treatment and complaints of pain. The ALJ performed a detailed analysis of that record evidence. Tr. at pp. 114-118.

> Based on this review, it is clear that the treatment records, reports from consultative medical examiners and state agency review physicians, and other objective medical evidence in the record provided a sufficient evidentiary basis for the ALJ's assessment of plaintiff's mental and physical abilities to do basic work activities. Accordingly, the court finds that the ALJ adequately discharged his duty to develop the record in accordance with the requirements of the regulations, without the need to order additional consultative medical examinations.

*Tanner v. Colvin*, 2015 WL 6442575, at *7 (W.D.N.Y. Oct. 23, 2015). Plaintiff's conclusory assertion that such an exam should have been ordered does not alone establish an error on the part of the ALJ. *Collins v. Berryhill*, 2018 WL 6171709, at *4 (W.D.N.Y. Nov. 26, 2018).

Plaintiff's arguments regarding the ALJ's consideration of her subjective complaints are, therefore, no basis for relief.[3]

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: September 11, 2019
    Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[3] The remainder of Plaintiff's arguments refer to evidence in the record concerning Dr. Gorczynski, Pl.'s Mem. of Law at p. 21, and reliance by the ALJ on evidence of Plaintiff's ability to vacuum, cook, and shop, *id*. at p. 22, but the record in this case contains no such information and so it appears that these arguments may have been inadvertently included in Plaintiff's Motion. *See* Def.'s Mem. of Law at pp. 19-20.